IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

DANNY SHEDD and JACINDA SHEDD,    *

    Plaintiffs,    *

vs.    *

                            CASE NO. 4:13-CV-18 (CDL)

BANK OF AMERICA, N.A.,    *

    Defendant.    *

_____

O R D E R

Countrywide Home Loans Servicing, LP ("Countrywide") foreclosed on the Oklahoma home of Plaintiffs Danny Shedd and Jacinda Shedd (collectively "the Shedds"). Danny Shedd is presently an active duty soldier stationed at Fort Benning, Georgia, which is within the district of this Court. The Shedds have filed the present action in this Court against Countrywide's successor, Bank of America, N.A. ("BOA"), alleging that Countrywide's conduct regarding the foreclosure violated their rights under both state and federal law. The procedural posture of this case is complicated by the pendency of an action in an Oklahoma state court in which the Shedds allege claims identical to those asserted in this action. BOA has filed a motion (ECF No. 6) seeking to stay this action pending resolution of the Oklahoma action, or in the alternative, to dismiss all claims pursuant to Federal Rule of Civil Procedure

12(b)(6).   After careful consideration of all of the factors relevant to a determination of when a federal court should stay a federal action while a state court action with identical claims is pending, the Court stays the present action.

FACTUAL BACKGROUND

Viewed in the light most favorable to the Plaintiffs, the facts are as follows.

In April 2007, the Shedds executed a mortgage conveying a security interest in their home in Bartlesville, Oklahoma ("the Property") to American Brokers Conduit.   Compl. ¶ 9, ECF No. 1. Their loan was subsequently assigned to Countrywide which later merged with BOA.   *Id.*   After Mr. Shedd joined the Army in July 2008 and learned that he would be assigned to a post outside the state of Oklahoma, Mrs. Shedd called Countrywide to inquire about programs for active duty soldiers who are required to move to a state other than where their residence is located.   *Id.* ¶¶ 11-12.   Countrywide informed Mrs. Shedd that if the Shedds submitted Mr. Shedd's active-duty military orders to Countrywide, then, without any additional process or communications with Countrywide, the Shedds would qualify for a ninety day forbearance on their mortgage payments.   *Id.* ¶¶ 13-14.   Mrs. Shedd then faxed Mr. Shedd's military orders to Countrywide.   *Id.* ¶ 15.

After Mr. Shedd was ordered to report to Fort Benning in Georgia, the Shedds listed the Property for sale on August 1, 2008. *Id.* ¶¶ 17-18. The Shedds paid their August 2008 mortgage payment, but they did not pay the mortgage in September, October, or November 2008. *Id.* ¶ 19. Mrs. Shedd contacted Countrywide and informed the company that she and Mr. Shedd had moved out of the Property and gave Countrywide their new Georgia address and their cell phone numbers. *Id.* ¶¶ 20-21.

In November 2008, the Shedds tried to purchase a home in Georgia. *Id.* ¶¶ 22, 25. Countrywide told the Shedds that they were approved for a mortgage contingent upon renting the Oklahoma Property. *Id.* ¶ 25. In December 2008, Mrs. Shedd attempted to pay the Oklahoma Property mortgage online, but her account was locked. *Id.* ¶ 27.

In preparation for purchasing the home in Georgia, Mr. Shedd pulled their credit reports at the end of December 2008. *Id.* ¶ 29. These reports showed that the Shedds' credit scores had dropped and reported a foreclosure status on the Property. *Id.* ¶ 30. After seeing these reports, Mr. Shedd called Countrywide and was informed that the Property was in foreclosure, no military orders had been received, and the Shedds had not been given the ninety day forbearance period that they requested under the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. app. § 501 *et seq.* *Id.* ¶¶ 31, 33. Mr.

Shedd then mailed another copy of his active-duty military orders to Countrywide. *Id.* ¶ 32. In January 2009, Countrywide informed Mrs. Shedd that it had not previously received Mr. Shedd's military orders, apologized to Mr. Shedd for the mistake, and informed him it would correct the past due payments. *Id.* ¶¶ 34-35.

Notwithstanding these communications with the Shedds, Countrywide filed suit on January 13, 2009 against the Shedds in Oklahoma state court, seeking a judgment against them for the amount due on the mortgage to the Property and a decree of foreclosure to sell the Property ("Oklahoma action"). Compl ¶ 26; Compl. Ex. 7, Pet. 2 & ¶¶ 10-11 [hereinafter Okla. Pet.], *Countrywide Home Loans Servicing, LP v. Shedd*, No. CJ-2009-22 (D. Ct. Washington Cnty., Okla. Jan. 13, 2009) [hereinafter *Countrywide*], ECF No. 1-2 at 33. On January 30, 2009, a process server served the Shedds with summonses in the Oklahoma action. Compl. ¶ 41; Compl. Ex. 7, D. Shedd Aff. of Service 1, *Countrywide*, ECF No. 1-2 at 52; Compl. Ex. 7, J. Shedd Aff. of Service 1, *Countrywide*, ECF No. 1-2 at 55.

After being served, Mr. Shedd again sent Countrywide his military orders. Compl. ¶ 45. Thereafter, a Countrywide representative apologized and told Mr. Shedd that Countrywide was granting the Shedds a modification, so they should disregard the summonses, did not need to call back, and should wait for a

call from a loan modification negotiator. *Id*. ¶¶ 46-47. The Shedds called Countrywide again on March 5, 2009 and were informed that the mortgage was not being modified and Countrywide would not change any information it had provided to the credit reporting agencies. *Id.* ¶ 51. Later in March 2009, the Shedds requested a loan modification and Countrywide instructed them that the loan was under review for modification and to not call back. *Id.* ¶¶ 54-55.

On March 12, 2009, prior to obtaining a default judgment against the Shedds, Countrywide filed an Affidavit in the Oklahoma action, stating that "Plaintiff is unable to determine with certainty whether any of the Defendants . . . are presently engaged in the military service of the United States, as provided by the Servicemembers Civil Relief Act of 2003." Compl. Ex. 7, Aff. as to Military Serv., *Countrywide*, ECF No. 1-2 at 56. On March 31, 2009, the Oklahoma state court ("Oklahoma court") entered a Journal Entry of Judgment, finding the Shedds in default because the Summons was properly served on the Shedds and they failed to answer or appear in the matter. Compl. Ex. 7, Journal Entry of J. 1, *Countrywide*, ECF No. 1-2 at 57. The Oklahoma court further found that the Shedds defaulted on the note and mortgage owed to Countrywide, and the Court entered judgment against the Shedds in the sum of $128,849.36 plus interest, expenses, late charges, attorneys' fees, and other

costs.  *Id.* at 2.  The Court also authorized the foreclosure on the Property and ordered judicial sale of the Property.  *Id.* at 3; Compl. Ex. 7, Special Execution & Order of Sale, *Countrywide*, ECF No. 1-2 at 61.

In April 2009, the Shedds received the Journal Entry of Judgment in the mail at their Georgia address.  Compl. ¶ 58. The Shedds called Countrywide and learned that Countrywide was not processing a modification and that the Property would be sold May 18, 2009.  *Id.* ¶ 59; Compl. Ex. 7, Notice of Sheriff's Sale, *Countrywide*, ECF No. 1-2 at 74.  The Shedds called Countrywide several more times asking for a modification, and Countrywide instructed them to submit specified documentation for a modification.  Compl. ¶¶ 60-63.  The Shedds submitted the documents, and Countrywide told them the modification was under review and not to call back.  *Id*.

In July 2009, Countrywide told the Shedds that the Property would not be sold at foreclosure if they paid all back payments, loan fees, and legal fees.  *Id.* ¶ 66.  During 2009, the attorneys for BOA, which had merged with Countrywide, scheduled and canceled the sale of the Property on several occasions.  *Id.* ¶ 70.

Before the Property was sold, the Shedds received loan modification papers from Countrywide in December 2009, which they signed and sent back to Countrywide.  *Id*. ¶¶ 69, 72, 75.

Nevertheless, in February 2010, Countrywide disavowed knowledge of a loan modification and told the Shedds the Property was in foreclosure. *Id.* ¶¶ 76-77. The Property was eventually sold at auction on June 28, 2010 for less than the amount of the judgment, while Mr. Shedd was deployed to Iraq. *Id.* ¶¶ 80-81. The Oklahoma court approved the sale on July 19, 2010. Compl. Ex. 7, Order Confirming Sale, *Countrywide*, ECF No. 1-2 at 107.

In May 2011, a Judge Advocate General's Corps officer wrote to BOA in an attempt to correct the adverse entries on the Shedds' credit reports relating to the default judgment and foreclosure on their property. Compl. ¶ 87. The officer notified BOA that it foreclosed on Mr. Shedd in violation of the SCRA. *Id.* BOA acknowledged receipt of that letter, but never responded. *Id.* ¶¶ 87-88. On August 18, 2011 an attorney from the Department of Justice in Washington, D.C. also wrote to BOA, notifying its counsel that they had foreclosed on the Shedds in violation of the SCRA. *Id.* ¶ 89.

The Shedds then filed an action in this Court on December 29, 2011, seeking to hold BOA liable as follows: under the SCRA for foreclosing on the Property while Mr. Shedd was an active duty member of the Army; for fraud by BOA agents leading to the default and foreclosure; for violating the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2601 *et seq.*; for wrongful foreclosure; and, for defamation in reporting

the foreclosure to credit bureaus. *Shedd v. Bank of Am., N.A.*, No. 4:11-CV-202 (CDL), Compl., ECF No. 1.   Because the claims asserted in that federal action were inextricably intertwined with the claims that were finally decided in the Oklahoma state court action, the Court dismissed the action without prejudice based on its lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine.   *Shedd v. Bank of Am., N.A.*, No. 4:11-CV-202 (CDL), 2012 WL 2375036, at *1, *5 (M.D. Ga. June 22, 2012).

On December 11, 2012, the Oklahoma state court entered an Order vacating its judgment and reopening the Oklahoma action. Compl. Ex. 8, Order, *Countrywide*, ECF No. 1-2 at 112 [hereinafter Order Vacating J.].   Notably, the Oklahoma court did not vacate the sale of the Property. *Id.*   The Shedds filed their Answer and Counterclaim in the Oklahoma lawsuit on December 28, 2012. Def.'s Mot. to Dismiss Ex. A, Answer & Countercl., *Countrywide*, ECF No. 6-1 at 2 [hereinafter Okla. Answer & Countercl.].   The Shedds' Oklahoma counterclaims seek to hold BOA liable as follows: under the SCRA for foreclosing on their Oklahoma property while Mr. Shedd was an active duty member of the Army; for fraud by BOA agents leading to the default and foreclosure; for wrongful foreclosure; for breach of contract; for defamation in reporting the foreclosure to credit bureaus; for intentional infliction of emotional distress; for

violating RESPA; and, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b). Okla. Answer & Countercl. ¶¶ 87-136.

Subsequent to filing their counterclaims in the Oklahoma action, the Shedds filed the present action in this Court on January 17, 2013. Compl. In this action, it is undisputed that the Shedds assert the exact same claims that they assert as counterclaims in the Oklahoma action. *Id.* ¶¶ 93-142; *see also* Pls.' Resp. in Opp'n to Def.'s Mot. to Dismiss 17, ECF No. 10.


DISCUSSION

BOA seeks to stay this action under the *Colorado River* abstention doctrine based upon the pendency of the Oklahoma action. The Shedds "do not dispute that the instant Georgia federal court action and the state court action in Oklahoma are parallel actions involving the same parties and are based on the same set of facts and circumstances." Pls.' Resp. 11. Nevertheless, they request that the Court allow this action to be pursued contemporaneously with the Oklahoma state court action.

Generally, "the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation v. United States*, 424 U.S. 800, 817

(1976) (internal quotation marks omitted).   Federal courts must honor their obligation to exercise the jurisdiction given to them.   *Id.* at 817-18.   Under the *Colorado River* abstention doctrine, however, when exceptional circumstances arise, a district court may stay an action in deference to an ongoing parallel action in a state court.   *Id.* at 818; *see also Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997-98 (11th Cir. 2004) (per curiam) ("[A] stay, not a dismissal, is the proper procedural mechanism for a district court to employ when deferring to a parallel state-court proceeding under the *Colorado River* doctrine.").   This ground for abstention "rest[s] on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817 (internal quotation marks omitted).

In determining whether exceptional circumstances exist to justify abstention, the Court considers the following factors:

> (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties.

*Moorer*, 374 F.3d at 997.   "No one factor is necessarily determinative," and in rendering its decision on abstention the

Court must carefully consider the combination of factors. *Colorado River*, 424 U.S. at 818-19; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983) ("[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist . . . . The weight to be given to any one factor may vary greatly from case to case. . . ."). One factor, however, can be the sole motivating reason for abstention. *Moorer*, 374 F.3d at 997. The Court will now evaluate each of the six factors.

The first factor assesses the order in which the courts assumed jurisdiction over the action. The Oklahoma state court assumed jurisdiction over the subject matter of these actions in 2009 when BOA filed its state court action seeking judicial foreclosure of the Property. Okla. Pet. 3. The Oklahoma court entered default judgment, foreclosed on the Property, and the Sheriff sold the property at auction on June 28, 2010. Journal Entry of J. 1-3; Order Confirming Sale. Only after the foreclosure and sale did the Shedds file their first lawsuit in this Court on December 29, 2011, which the Court dismissed for lack of subject matter jurisdiction on June 22, 2012. *Shedd,* 2012 WL 2375036, at *1, *5. In December 2012, the Oklahoma state court then vacated the default and reopened the case, continuing its jurisdiction over the matter. Order Vacating J. Then, the Shedds filed the current action in this Court. The

Oklahoma court has now asserted jurisdiction over the subject matter of this litigation on two separate occasions before the Shedds filed later actions in this Court.   Thus, this factor weighs in favor of a stay of the present action.   *See, e.g.*, *CCB, LLC v. Banktrust*, 438 F. App'x 833, 834-35 (11th Cir. 2011) (per curiam) (upholding district court's decision to stay the action pending resolution of an earlier-filed state court action involving "substantially the same parties, property, and issues"); *Preston v. Fishman*, No. 8:10-cv-2300-T-23TBM, 2011 WL 129843, at *1 (M.D. Fla. Jan. 14, 2011) (finding that the first *Colorado River* factor favored a stay of the later-filed federal action involving property foreclosure issues pending in state court).

The second factor weighs the comparative convenience of each forum.   The focus of this factor is the "physical proximity of the federal forum to the evidence and witnesses." *Ambrosia Coal & Constr. Co. v. Pagés Morales*, 368 F.3d 1320, 1332 (11th Cir. 2004).   The claims in this action are based on initiation of foreclosure proceedings in Oklahoma involving property located in that state.   The publications of foreclosure occurred in that state.   BOA contends that many witnesses in the case will likely include many Oklahoma witnesses—"foreclosure counsel, notaries, records custodians, real estate agents, and anyone else involved in the foreclosure, dispossession, or

12

resale of the Oklahoma Property." Def.'s Mot. to Dismiss 15, ECF No. 6. Conversely, the Shedds argue that the Middle District of Georgia provides the more convenient forum because they reside in the district; BOA has its headquarters and corporate counsel in North Carolina, which is closer to Georgia than to Oklahoma; and, an unnamed potential witness identified as Mr. Shedd's "commanding officer" resides in Georgia. Pls.' Resp. 15-16. The residence of the parties is not determinative as to the convenience of the forum factor. *Ambrosia Coal*, 368 F.3d at 1332-33. The Court finds that because Oklahoma is where the Property is located, where the publications and judicial sale occurred, and where most of the witnesses are located, this factor weighs in favor of a stay.

The third factor relates to the order in which jurisdiction was obtained and the relative progress of the two actions. The Shedds admit that Oklahoma obtained jurisdiction over the Property involved first in January 2009. Resp. at 14. As discussed above, the Oklahoma action was filed well before the first action in this Court, and the Oklahoma action was reopened before the Shedds filed the present action in this Court.

This factor also requires consideration of the extent of progress in both actions. *Ambrosia Coal*, 368 F.3d at 1333. The procedural history of the case in the Oklahoma state court demonstrates that the Oklahoma judge has adjudicated this case

13

for nearly three years whereas this Court has not had any substantive dealings with the present action other than to dismiss its predecessor in 2012 and entertain this pending motion. Accordingly, this factor weighs in favor of a stay. *See, e.g.,* *Colorado River*, 424 U.S. at 820 (affirming the federal court's abstention and finding significant "the apparent absence of any proceedings in the District Court, other than the filing of the complaint, prior to the motion to dismiss").

The fourth factor addresses the goal of avoiding piecemeal litigation. It is uncontested that the Shedds' claims in the present action are the same as their first-filed counterclaims pending in the Oklahoma action. These actions involve the same parties, property, issues, and legal claims. The Shedds even acknowledge that allowing the two actions to proceed contemporaneously would encourage a race to judgment. *See* Pls.' Resp. 17–18 & n.7.

This race to adjudication is part of what the *Colorado River* principles seek to avoid. Permitting the present action to proceed while the Oklahoma action is also being pursued would lead to a waste of judicial resources and potential conflicting, duplicative decisions. *See, e.g.,* *Colorado River*, 424 U.S. at 819 (focusing on the risk of piecemeal litigation in affirming the dismissal of a federal action in favor of a pending state action and analogizing the avoidance of piecemeal litigation to

14

the rule that "jurisdiction be yielded to the court first acquiring control of property, for the concern in such instances is with avoiding the generation of additional litigation through permitting inconsistent dispositions of property"); *CCB,* 438 F. App'x at 835 (affirming the district court's finding that the risk of piecemeal litigation weighed in favor of abstention where a state action involved the same parties and financial transaction); *Preston*, 2011 WL 129843, at *2 ("Maintenance of parallel actions creates the opportunity both for an unseemly 'race' between the state and federal courts and for inconsistent results at the race's conclusion.").

The fifth factor in evaluating whether a stay should be granted focuses on whether federal law provides the rule of decision. In these two actions, claims are made under both federal and state law. The core of this action and the Oklahoma counterclaims involves a dispute regarding a mortgage foreclosure on residential real estate, claims generally litigated in state courts and governed by state law. *Accord Preston*, 2011 WL 129843, at *2. The Shedds also seek to recover under federal statutes, specifically RESPA, SCRA, and FCRA, claims which can also be—and have been—asserted in Oklahoma state court. The Shedds agree with BOA that Oklahoma law applies to their breach of contract claim, but they argue that Georgia law should apply to their tort claims for fraud,

15

wrongful foreclosure, defamation, and intentional infliction of emotional distress. BOA argues that Oklahoma law applies to the Shedds tort claims, making Oklahoma the more convenient and more appropriate forum with predominating legal issues to resolve under its own laws.

Sitting in Georgia, the Court applies Georgia's choice of law rules. *Federated Rural Elec. Ins. Exch. v. R.D. Moody & Assocs., Inc.*, 468 F.3d 1322, 1325 (11th Cir. 2006) (per curiam). Georgia's choice of law rules apply the doctrine of *lex loci delicti*, the traditional rule that "a tort action is governed by the substantive law of the state where the tort was committed." *Dowis v. Mud Slingers, Inc.*, 279 Ga. 808, 809, 816, 621 S.E.2d 413, 414, 419 (2005). "The general rule is that the place of the wrong, the locus delicti, is the place where the injury sustained was suffered rather than the place where the act was committed[.]" *Risdon Enters., Inc. v. Colemill Enters., Inc.*, 172 Ga. App. 902, 903, 324 S.E.2d 738, 740 (1984) (internal quotation marks omitted). Because the foreclosure action was filed in Oklahoma, the affected Property is located in Oklahoma, and the publication regarding the foreclosure and the Shedds' financial condition occurred in Oklahoma, the Court finds that Oklahoma is the place of the act and the injury. *Cf. Triguero v. ABN AMRO Bank N.V.*, 273 Ga. App. 92, 95, 614 S.E.2d 209, 212 (2005) ("[I]n defamation cases, the law of the

jurisdiction where the publication occurs determines the rights and liabilities of the parties.").[1]   Therefore, Oklahoma law applies to the Shedds' wrongful foreclosure claim and defamation claim.  *Accord Wells Fargo Bank, N.A. v. Averett Family P'ship, LLLP,* No. 4:12-CV-140 (CDL), 2012 WL 6728058, at *6 (M.D. Ga. Dec. 28, 2012) (finding that Florida constituted "the place of the act and the injury" and thus Florida law applied when "the foreclosure action was filed in Florida, the affected properties [we]re located in Florida, and the publication . . . occurred in Florida").  Oklahoma law clearly predominates over Georgia law. Moreover, the federal law claims do not predominate over the state law claims, and the Court is convinced that the Oklahoma court can fairly apply the federal law giving rise to those federal claims, which do not appear to be unduly complicated. Accordingly, this factor weighs in favor of a stay.

The sixth and final factor considers whether the state court will adequately protect the rights of all parties. Nothing in the record establishes any superiority of the federal to the state forum in this case.   The Court finds that the

---

[1] Georgia law instructs that the nature of the tort of wrongful foreclosure/attempted foreclosure is akin to defamation.  *See Aetna Fin. Co. v. Culpepper*, 171 Ga. App. 315, 319, 320 S.E.2d 228, 232 (1984) (stating that wrongful attempted foreclosure requires "a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition, and that damages were sustained as a direct result of this publication").

Oklahoma state court is well-situated to adequately protect the rights of all parties and manage the claims in this action.

The *Colorado River* factors weigh heavily in favor of a stay of this action. If this is not the "exceptional" case contemplated for a stay by the *Colorado River* doctrine, then it is difficult to imagine when such a case would ever arise. The Court is duty bound to apply the principles enunciated in *Colorado River,* and those principles demand a stay in this action.

CONCLUSION

The Court grants BOA's motion to stay (ECF No. 6). This action is stayed until further Order of the Court. The Clerk is directed to administratively close this action. Upon the resolution of the Oklahoma action or if other circumstances warrant it, the parties may file a motion to reopen this action.

IT IS SO ORDERED, this 12th day of August, 2013.

S/Clay D. Land
_____
CLAY D. LAND
UNITED STATES DISTRICT JUDGE